[Civ. No. 10815. First Appellate District, Division One.—November 9, 1939.]

CLAYTON R. JANSSEN, Respondent, v. ALFRED W. GORDON et al., Defendants; RUDOLPH BRANDT et al., Appellants.

Thomas, Beedy & Paramore for Appellants.

William Klein, Klein & Clarke for Respondent.

PETERS, P. J.—Rudolph and Marguerite Brandt appeal from a deficiency judgment in the total sum of $2,758.95 rendered against them as the indorsers of a promissory note secured by a deed of trust on certain described real property. The makers of the note, Alfred and Barbara Gordon, were originally made defendants, but were never served with process. The plaintiff elected to proceed against the Brandts alone as the indorsers of the note.

The note which forms the basis of this action was executed by the Gordons in favor of Marguerite Brandt in the sum of $3,500.00, and is dated May 19, 1933, payable on or before

one year from date. This note was secured by a deed of trust and was a renewal note, the original obligation having been incurred in 1926. On October 29, 1934, after maturity and while interest was in default, the note and deed of trust were transferred by the Brandts to Janssen in an exchange transaction. In this transaction Janssen and Mrs. Brandt negotiated through a real estate agent named St. Germain, who acted as agent for and received commissions from both of the negotiating parties. On September 25, 1934, the Brandts signed and delivered to St. Germain a written offer to exchange properties with Janssen. By this offer the Brandts offered to exchange certain real property and the Gordon note for certain real property owned by Janssen. The offer, in reference to the note, provided that the Brandts agreed to ''assign and transfer'' to Janssen the Gordon note. When this offer was transmitted to Janssen, in the presence of St. Germain, Janssen wrote into the offer, and initialed the following provision: ''The first parties agree to indorse and unconditionally guarantee the payment of the aforementioned $3,750.00 note'' —the note being for $3,500 and the balance representing unpaid interest. Janssen then told St. Germain to take the original offer back to the Brandts and have them initial the insertion, if they agreed thereto. This was never done. The evidence is uncontradicted that St. Germain never submitted to the Brandts the changed offer, and Mrs. Brandt testified she never saw the insertion until the time of trial. Janssen testified, and his good faith in the entire transaction is not questioned, that after making the insertion St. Germain told him that the ''deal'' had been ratified by the Brandts ''with all insertions''; that he asked the agent to bring back an initialed copy; that several days later St. Germain telephoned him to tell him all of the papers were in the title company properly indorsed. Janssen had no conversations directly with Mrs. Brandt until the deal was closed at the title company. St. Germain admitted that the insertion had never been submitted to the Brandts.

At the time the deal was closed at the title company, Janssen, St. Germain, Mrs. Brandt, and a Mr. Smitten, a friend and representative of Mrs. Brandt, were present. St. Germain testified that Mrs. Brandt told him she wanted Smitten to handle the closing of the deal; that he then told ''Smitten my instructions that the note was to be indorsed by the

Brandts''; that whether Mrs. Brandt heard this he could not say; that he told Smitten "that it was requisite that her husband and she indorse the note''; that Smitten asked him if he was sure and he replied he was positive "and he [Smitten] requested Mrs. Brandt to sign it, and she signed it right there at the title company''. Mrs. Brandt testified that Smitten was only present for a short time and left before she signed the note; that she signed the note in the belief it was the proper way to assign it to Janssen pursuant to her offer. It was stipulated that if Smitten were called he would testify that he did not discuss the indorsement with anyone and that he left the office before the note was indorsed.

As already stated, the note was in default at the time it was transferred to Janssen. The Gordons failed to pay interest or principal, and, after giving the requisite notice, Janssen caused the property to be sold in April of 1936 under the deed of trust, and purchased the same at such sale for $2,000. This action is for the deficiency. It should be mentioned, that, upon the order of the trial court, the property was appraised by the inheritance tax appraiser as of the day of sale at $4,750.

Reading all of the evidence, and indulging in all reasonable inferences in favor of respondents, the most that can be said is that Mrs. Brandt, through Smitten, knew that to consummate the deal she had to indorse the note. Her contention that she believed that such indorsement was necessary to transfer the note, and that she did not intend to sign as the indorser of a negotiable instrument cannot be sustained. On the other hand, the contention of respondent that Mrs. Brandt is liable as a guarantor of the note, as well as an indorser, under the terms of the counteroffer, cannot be upheld. There is no evidence that Mrs. Brandt knew of this change in the offer, except in so far as she was required to indorse the note. She neither signed nor initialed this change in the contract.

The fact that St. Germain was acting in a dual capacity as agent for both parties, and that he knew of the change made by Janssen in the offer, cannot serve to charge Mrs. Brandt with such knowledge. In transmitting the counteroffer of Janssen to the Brandts, St. Germain was clearly acting as the agent of Janssen. Janssen cannot take advantage of the failure of the agent to disclose the change made by him to the Brandts. Moreover, the contract between the parties

was consummated, and the legal rights of the parties became fixed, at the title insurance company, when the papers were signed and the note indorsed. As was said in *Merchants Nat. Bank* v. *Bentel,* 166 Cal. 473, at p. 476 [137 Pac. 25] : "The allegation that the indorsement was intended and accepted as a guaranty must be disregarded. An indorsement *by the payee* of a promissory note is a contract in writing and its effect is controlled by the law and cannot be changed by the oral agreement of the parties."

It should also be mentioned that the complaint is not based on any theory that the Brandts were guarantors of the note. The complaint contains the usual allegations found in an action against the makers and indorsers of a secured promissory note after sale, to recover a deficiency.

■ The note upon which the action is predicated is negotiable in form. There is no allegation in the complaint or no evidence in the record that the note was ever presented to the makers or that notice of dishonor was given the indorsers. These are indispensable conditions precedent for the maintenance of such an action. The liability of the indorser is secondary. He is not liable unless presentment is made and notice of dishonor given to him. (Civ. Code, secs. 3151, 3170, 3147, 3165.) ■ To escape the effect of these sections, respondent makes several arguments. It is first urged that because the note was secured by a deed of trust it is non-negotiable. This contention overlooks the effect of the 1923 amendment to section 3265 of the Civil Code. Since that date the section has expressly provided that the negotiability of a note otherwise negotiable in form is not affected by the fact it is secured by a mortgage or deed of trust. To hold the indorsers liable on such a secured note, presentment for payment and notice of dishonor are indispensable. (*Bank of America, etc.,* v. *Century etc. Co.,* 19 Cal. App. (2d) 197 [65 Pac. (2d) 110].)

■ Respondent's next argument is equally without merit. He urges that presentment for payment and notice of dishonor were not necessary to charge the Brandts as indorsers, because the note here involved was transferred after maturity, at a time when it was overdue and the interest was delinquent. No authority is or can be cited to support such contention. It is well settled that when a negotiable note is indorsed after maturity, the note becomes a demand note, and the indorser is

entitled to have it presented for payment and notice of dishonor given him within a reasonable time. The rule is stated as follows in 19 California Jurisprudence, page 891, section 77: "Inasmuch as it is a rule that a note indorsed after maturity is deemed payable on demand, the indorser is entitled exactly to the same rights in regard to presentment and notice as the indorser of any other instrument payable on demand." In 8 Corpus Juris, page 526, section 740, the rule, supported by many authorities, is stated as follows:

"Although a note is indorsed after it is overdue, the indorser as a rule is entitled to have demand made on the maker within a reasonable time, and it has been said that the only difference between demand as regards indorsers before maturity and indorsers after maturity is as to the time when the demand must be made. This is so, although at the time of the indorsement he knew the maker to be insolvent or at the time of transfer a suit on the note was pending in his name against the maker."

In *Beer* v. *Clifton,* 98 Cal. 323, 325 [33 Pac. 204, 35 Am. St. Rep. 172, 20 L. R. A. 580], the court in holding certain instructions incorrectly stated the law, declared: "They are somewhat conflicting, but they announce the doctrine that the indorser of a note after its maturity is absolutely liable thereon, without regard to any right to have a demand made upon the maker and notice to the indorser on non-payment. This is not the law. The indorser of an overdue note has as much right to demand and notice as the indorser of a note before maturity, the only difference being as to the time when the demand and notice must be made and given. This has always been the law and is stated in all the text-books. In Daniel on Negotiable Instruments (par. 611) the rule is stated in these words: 'When a negotiable instrument is indorsed after maturity, payment must be demanded of the payor within a reasonable time, and notice, in the event of a refusal, given to the indorser, in order to charge him, it being regarded as equivalent to one payable on demand.' " (See, also, *Wills* v. *Booth,* 6 Cal. App. 197, 198 [91 Pac. 759]; 19 Cal. Jur., p. 900, sec. 84, p. 907, sec. 88; 10 Cor. Jur. Sec., p. 853, sec. 348, subd. d; Brannon, Negotiable Instrument Law, 6th ed., p. 852.)

As already stated, there is no allegation in the complaint that the note was presented for payment or notice of dis-

honor given the Brandts, nor is there any evidence on these points, nor is there any allegation or proof that either of these requirements was waived. Under such circumstances the other points raised by the parties require no discussion.

The judgment appealed from is reversed.

Ward, J., and Goodell, J., *pro tem.*, concurred.